UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHRISTOPHER WAYNE HURST and TRACY GILBERT GREGORY, Individually and on behalf of their minor son, CHRISTOPHER DAVID HURST | CIVIL ACTION |
| VERSUS | NO: 13-4770 |
| AMERICAN MEDIA, INCORPORATED, WIREIMAGE, a division of GETTY IMAGES, INCORPORATED, and JESSICA SIMPSON | SECTION: R(5) |

**ORDER AND REASONS**

Before the Court is plaintiffs' motion to remand this case to state court.[1] For the following reasons, the Court GRANTS the motion.

**I.   BACKGROUND**

Plaintiffs Christopher Wayne Hurst ("Hurst"), Tracy Gregory, and Christopher David Hurst ("Christopher") originally filed this suit in the 24th Judicial District Court for the Parish of Jefferson.[2] The case arises out of a photograph taken of Christopher and defendant Jessica Simpson that was allegedly published on the cover of *OK! Magazine (OK!)*, a weekly publication of defendant American Media, Inc. ("AMI").[3]

---

[1]   R. Doc. 14.

[2]   R. Doc. 1-1.

[3]   *See id.*

Plaintiffs allege that a photographer took the photograph at issue without plaintiffs' permission at a publicity event where Simpson appeared to promote her clothing line.[4] Hurst was holding Christopher, his newborn son, as he stood in line with his daughter to meet Simpson.[5] As Hurst and Christopher approached the front of the line, a woman standing behind Hurst offered to take a picture of Simpson holding Christopher and email it to Hurst.[6] Hurst agreed and handed Christopher to Simpson for the photograph.[7] Hurst alleges that after he handed Christopher to Simpson, a previously unseen photographer hurriedly took pictures of Simpson holding the baby.[8] The woman who offered to take a photograph with her cell phone also took pictures and emailed them to Hurst.[9]

Several months later, the woman contacted Hurst and informed him that a photograph of Simpson holding Christopher was on the cover of *OK!* with a headline that read "FIRST DAYS AS A NEW MOM."[10] The photograph was attributed to a photographer who

---

[4]     R. Doc. 1-1 at 2.

[5]     *Id.*

[6]     *Id.*

[7]     *Id.*

[8]     *Id.*

[9]     *Id.*

[10]    *Id.* at 3.

worked for defendant WireImage, a division of Getty Images, Inc. ("Getty").[11] Hurst alleges that no one from *OK!* or WireImage sought permission and that he never gave permission to take or use Christopher's photograph.[12]

On April 11, 2013, plaintiffs sued AMI, Getty, and Simpson for (1) invasion of privacy based on misappropriation of Christopher's image for defendants' use or benefit, (2) false light defamation, and (3) negligent infliction of emotional distress.[13] Plaintiff alleges that a rival publication of *OK!* paid Simpson $800,000 to publish the first photographs of her actual child and that *OK!* has paid millions of dollars to celebrities to publish the first photographs of the celebrities' children.[14] The complaint asserts that "upon currently known facts" the plaintiffs "do not contend that [their] damages exceed $75,000, exclusive of interests and costs."[15]

AMI removed the case to this Court pursuant to 28 U.S.C. §§ 1441, 1446, and 1332(a)(1) on the grounds that complete diversity exists between all parties and the amount in controversy exceeds

---

[11]   *Id.* at 4.

[12]   *Id.*

[13]   *Id.* at 5-7.

[14]   *Id.* at 4.

[15]   *Id.* at 7.

$75,000.[16] Getty consented to removal.[17] Simpson has made no appearance in this action, and the record contains no indication that she has been served.

Plaintiffs argue that the amount in controversy does not exceed $75,000, and they seek to remand the action to Louisiana state court. Plaintiffs have offered to execute a stipulation that damages do not exceed $75,000, but AMI has not consented to such a stipulation.[18] AMI still contends that the amount in controversy exceeds $75,000.[19]

## II. LEGAL STANDARD

### A. Removal

A defendant may generally remove a civil action filed in state court if the federal court has original jurisdiction over the action. *See* 28 U.S.C. § 1441(a). The removing party bears the burden of demonstrating that federal jurisdiction exists. *See Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). In assessing whether removal was appropriate, the Court is guided by the principle, grounded in notions of comity and the recognition that federal courts are courts of limited

---

[16]   R. Doc. 1 at 3-4.

[17]   R. Doc. 1-1 at 13.

[18]   R. Doc. 14-1 at 4.

[19]   R. Doc. 18.

jurisdiction, that "removal statute[s] should be strictly construed in favor of remand." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The Court must remand the case to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

### B. Amount in Controversy

Under Fifth Circuit law, a removing defendant's burden of showing that the amount in controversy is sufficient to support federal jurisdiction differs depending on whether the plaintiff's complaint alleges a specific amount of monetary damages. *See Allen*, 63 F.3d at 1335. When the plaintiff alleges a damage figure in excess of the required amount in controversy, "that amount controls if made in good faith." *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). If the plaintiff pleads damages less than the jurisdictional amount, this figure will also generally control, barring removal. *Id.* "Thus, in the typical diversity case, the plaintiff remains the master of his complaint." *Id.*

Yet Louisiana law ordinarily does not allow a plaintiff to plead a specific amount of damages. *See* La. Code Civ. P. art. 893. A plaintiff is, however, permitted to make "a general allegation that the claim exceeds or is less than" a particular amount if making such an allegation is necessary to establish the

5

lack of jurisdiction of federal courts due to insufficiency of damages. *Id.* When, as here, the plaintiff has alleged an indeterminate amount of damages, the Fifth Circuit requires the removing defendant to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882 (5th Cir. 2000); *see also De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995). A defendant satisfies this burden either by showing that it is facially apparent that the plaintiff's claims exceed the jurisdictional amount or by setting forth the facts in dispute supporting a finding that the jurisdictional amount is satisfied. *Allen*, 63 F.3d at 1335. The defendant must do more than point to a state law that might allow the plaintiff to recover more than the jurisdictional minimum; the defendant must submit evidence that establishes that the actual amount in controversy exceeds $75,000. *See De Aguilar*, 47 F.3d at 1412. Where the "facially apparent" test is not met, the Court may consider summary-judgment type evidence relevant to the amount in controversy as of the time of removal. *Allen*, 63 F.3d at 1336.

If the defendant meets its burden of showing the requisite amount in controversy, the plaintiff can defeat removal only by establishing with legal certainty that the claims are for less than $75,000. *See De Aguilar*, 47 F.3d at 1411-12. Absent a statute limiting recovery, "[l]itigants who want to prevent

removal must file a binding stipulation or affidavit with their complaints; once a defendant has removed the case, . . . later filings [are] irrelevant." *Id.* at 1412 (quoting *In re Shell Oil Co.*, 970 F.2d 355, 356 (7th Cir. 1992)); *see also id.* at 1412 n.10 ("The general principle is that plaintiffs will have to show that they are bound irrevocably by their state pleadings in those situations."*)*; *Hammel v. State Farm Fire & Cas. Co.*, No. 06-7470, 2007 WL 519280, at *2 (E.D. La. Feb. 14, 2007) ("Because Louisiana plaintiffs are not limited to recovery of the damages requested in their pleadings, a plaintiff must affirmatively renounce the right to accept a judgment in excess of $75,000 for his pre-removal state court pleadings and stipulations to bind him."). *Post*-removal affidavits may be considered only if the amount in controversy is ambiguous at the time of removal, and then only for purpose of determining the amount in controversy as of the date of removal. *See Gebbia*, 233 F.3d at 883; *Asociacion Nacional de Pescadores v. Dow Quimica de Colombia, S.A.*, 988 F.2d 559, 565 (5th Cir. 1993) (if the affidavit "clarif[ies] a petition that previously left the jurisdictional question ambiguous," the court may consider the affidavit in determining whether removal was proper), *abrogated on other grounds by Marathon Oil Co. v. Ruhgras*, 145 F.3d 211 (5th Cir. 1998), *rev'd on other grounds*, 526 U.S. 574 (1999). If the amount in controversy is clear from the face of the complaint, post-removal

stipulations purporting to reduce the amount of damages cannot deprive the Court of jurisdiction. *Gebbia*, 233 F.3d at 883.

**III. DISCUSSION**

Plaintiffs specifically allege in their state court petition that, "upon currently known facts," their damages do not "exceed $75,000, exclusive of interest and costs."[20] Thus, it is not "facially apparent" that federal jurisdiction is proper, and the burden falls on AMI to submit evidence that establishes by a preponderance of the evidence that the amount in controversy exceeds $75,000. *See Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 868-69 (5th Cir. 2002) (when plaintiffs "specifically allege[] that their respective damages will not exceed the jurisdictional amount, . . . [t]he defendant must produce evidence that establishes that the actual amount in controversy exceeds [the jurisdictional threshold]" (quoting *De Aguilar*, 47 F.3d at 1409-10, 12) (third alteration in original)).

In its Notice of Removal, AMI contends that the amount in controversy "clearly exceeds $75,000" because the plaintiffs allege that rival publications of *OK!* paid Simpson $800,000 for the right to publish the first photographs of her actual child and that *OK!* has paid millions to other celebrities for the

---

[20] R. Doc. 1-1 at 7.

rights to publish photographs of their children.[21] These two facts alleged by the plaintiffs are irrelevant to the amount of damages that they seek. The plaintiffs have not suggested that Christopher is a celebrity, nor have they suggested that a magazine would be willing to pay such sums to publish Christopher's photograph. (Indeed, the plaintiffs specifically alleged that their damages do not exceed $75,000.) The damages that these plaintiffs can recover on their tort claims for invasion of privacy, false light defamation, and negligent infliction of emotional distress are simply unrelated to the sum that a movie star could receive for a picture of her child. In fact, the relatively minor nature of plaintiffs' claims here distinguishes this case from many of the cases cited in AMI's brief, in which the jurisdictional threshold was found to be satisfied because the plaintiffs alleged very extensive damages. *See, e.g.*, *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 387–88 (5th Cir. 2009) (alleged damages from refinery fire included "individual and familial suffering," "injuries to physical and mental health," "expenses incurred by reason of illness," "economic and financial harm," "loss of enjoyment of life and peaceful use of property," as well as other general damages and punitive damages); *French v. Keybank Nat'l Assoc.*, No. 4:12CV352, 2012 WL 7827548, at *1 (E.D. Tex. Oct. 4, 2012) (plaintiffs pled

---

[21] R. Doc. 1 at 5-6; *see also* R. Doc. 18 at 2.

exemplary and punitive damages under three separate causes of action and sought damages under "several different provisions" of the Texas Finance Code); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, No. 10-4120, 2012 WL 1204734, at *3 (E.D. La. Apr. 11, 2012) (plaintiffs alleged that their damages "include[d], but [were] not limited to, past *and future* physical injuries, past *and future* physical impairments and disability, past *and future* reasonable and necessary medical expenses, past *and future* loss of enjoyment and quality of life and other damages and injuries, loss of consortium, and loss of use and/or opportunity to use safe and adequate shelter . . . as well as, all general, special, incidental and consequential damages"); *Richard v. Ga. Gulf Lake Charles, LLC*, No. 07-0050, 2007 WL 2319804, at *7 (W.D. La. Aug. 10, 2007) (plaintiff alleged that they had "suffered respiratory illnesses, pulmonary disease, neurological deficits and gastrointestinal problems"; past and future pain and suffering, emotional distress, and loss of enjoyment of life; medical expenses; and loss of earning capacity); *Griffin v. Ga. Gulf Lake Charles, LLC*, 562 F. Supp. 2d 775, 779 (W.D. La. 2008) (same).

AMI also emphasizes the phrase "upon currently known facts" from the plaintiffs' complaint, as if to suggest that this phrase constitutes evidence that the amount in controversy exceeds $75,000.[22] This is incorrect. The plaintiffs have simply

---

[22] R. Doc. 1 at 6; R. Doc. 18 at 2.

acknowledged that future evidence might increase the amount in controversy. Under Fifth Circuit law, AMI must actually *produce* such evidence in order to meet its burden to show that removal was proper. *Grant*, 309 F.3d at 868-69. But AMI has failed to submit any evidence at all related to the amount in controversy; instead, "[i]t merely alleges in a conclusory manner that the amount in controversy exceed[s] the requisite jurisdictional amount." *Trahan v. Drury Hotels Co., LLC*, No. 11-521, 2011 WL 2470982, at *6 (E.D. La. June 20, 2011) (quoting *Davis v. Grider*, 214 F.3d 1350 (5th Cir. 2000)). Such a conclusory allegation is not sufficient to satisfy AMI's burden. *See id.*

AMI also suggests that plaintiffs' demand for a jury trial, which requires a claim in excess of $50,000, *see* La. Civ. Code. P. art 1732, is "evidence" of the amount in controversy,[23] but this too is incorrect. "The Louisiana Supreme Court has made clear that the amount used to determine whether a plaintiff is entitled to a jury is not analogous to the 'amount in controversy' in federal diversity jurisdiction." *St. Augustine High Sch., Inc. v. Applewhite*, No. 11-1089, 2011 WL 3423942, at *4 (E.D. La. Aug. 5, 2011) (citing *Benoit v. Allstate Ins. Co.*, 773 So.2d 702, 707 (La. 2000)). This is because the amount in controversy is fixed at the time of removal, while the value of the "cause of action" under Article 1732 is determined "at the

---

[23] R. Doc. 18 at 4.

11

time the right to a jury trial is litigated." *Id.* (quoting *Benoit*, 773 So.2d at 708). Therefore, the plaintiffs' jury demand is "not . . . instructive in determining whether the jurisdictional amount in controversy has been satisfied in this case." *Id.* And even if plaintiffs' jury demand were probative of the amount of controversy, it would only show that the amount is greater than $50,000. The jurisdictional threshold, however, is higher.

Indeed, the *only* evidence in the record relating to the amount in controversy is the affidavit of plaintiffs' counsel stating that plaintiffs have offered to stipulate that their damages do not exceed $75,000.[24] The Court may consider this post-removal affidavit to aid in its determination of the amount in controversy because the petition was ambiguous as to that amount. *See Gebbia*, 233 F.3d at 883. Given this affidavit, and given the lack of any evidence that the amount in controversy exceeds $75,000, the Court finds that remand is proper because there is no basis upon which to conclude that the jurisdictional threshold is satisfied.

## IV. CONCLUSION

Defendants have not met their burden to show by a preponderance of the evidence that the amount in controversy

---

[24] R. Doc. 14-5.

exceeds $75,000. Accordingly, the Court GRANTS plaintiffs' motion to remand.

New Orleans, Louisiana, this 30th day of August, 2013.

                                      SARAH S. VANCE
                          UNITED STATES DISTRICT JUDGE